1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant CHARKON CHANSAEM

7              IN THE UNITED STATES DISTRICT COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | No. CR 07-435 PJH |
| vs. ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| CHARKON CHANSAEM, ) | Date:   October 10, 2007 |
| Defendant. ) | Time:   1:30 p.m. |
| ) | Court:  The Honorable Phyllis J. Hamilton |

## INTRODUCTION

Mr. Charkon Chansaem, a native and resident of Thailand, was flying through San Francisco airport on his way to work as a janitor for Princess Cruise Lines in Los Angeles, bound for Mexico and Alaska.  When he arrived at SFO, due to language difficulties, Mr. Chansaem did not understand that he was expected to collect his luggage and take the luggage through customs prior to boarding the flight for Los Angeles.  When Mr. Chansaem did not collect his luggage, U.S. Customs inspected it, and discovered ten CDs containing child pornography.  Following his detention, Mr. Chansaem was interviewed at the airport extensively in English, which is not his first or native language.  The ensuing "statements" that are the result of that broken-English interview with ICE agents are disputed between the parties, as it is not clear to what extent Mr. Chansaem understood agents' questions and/or properly communicated his answers in English.

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CHANSAEM*, 07-425 PJH

1  Mr. Chansaem never *knowingly and intelligently* told interrogating agents that he understood that child pornography was illegal in the United States or that the images he was carrying were illegal. The fact of the matter is that he did not. The CDs were placed in his luggage along with regular belongings, with no attempt made to hide or camouflage them. Moreover, Mr. Chansaem readily admitted possessing the luggage in question, and cooperated with agents completely by attempting to answer questions that he thought he understood. There is no indication that Mr. Chansaem intended to distribute, sell, view, or use the CDs while in the United States or that he was somehow profiting from distributing child pornography.

This is not a case of a high-tech, savvy businessman who is traveling around the world trading, selling and profiting from the industry of child pornography. This instead is a case of an unsophisticated immigrant who was essentially raised on a farm, one generation removed from subsistence rice farming, who passed through the United States en route to a menial job on an international cruise ship not fully understanding the import of United States law in connection with this material. In Thailand, such images are readily available for purchase, and although the government is trying hard to revise cultural acceptance of the child sex trade, there is a far different perception and understanding overseas about the many dangers associated with child pornography. As noted by the Probation Officer in her report, "Mr. Charkon has never resided in the United States and has demonstrated a naivete indicative of a different cultural reference to the crime of child pornography." PSR ¶ 62. Regardless, the law provides for punishment of individuals in Mr. Chansaem's position with a five year mandatory minimum sentence. Mr. Chansaem will now pay dearly for his misunderstanding with five years of his life lost behind bars.

Mr. Chansaem now appears before the Court been convicted of one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1). Due to the fact that Mr. Chansaem was in transit at the time the CDs were discovered, the case meets the definition of "transport" under the statute. All parties agree that the applicable advisory Offense Level Guideline range for Mr. Chansaem is Offense Level 26, and that the correct criminal history category is I. The Probation

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CHANSAEM*, 07-425 PJH    - 2 -

1  Officer has recommended the mandatory minimum sentence of 60 months, which is three months
2  lower than the range called for in the Plea Agreement that now binds Mr. Chansaem's requested
3  sentence.  In accordance with the boundaries of the plea agreement, as well as the Probation
4  Officer's recognition of the many mitigating factors at issue in this case, Mr. Chansaem respectfully
5  requests the Court to impose a low-end sentence of incarceration for 63 months.

## STATEMENT OF FACTS

7      By all accounts, Charkon Chansaem grew up under difficult circumstances.  He was born on a
8  rice farm in rural Thailand to uneducated parents.  He and his three siblings worked on the farm
9  during the rice season, helped to raise chickens and grew vegetables for the family to eat.  The rice
10 they grew was the means of the family's finances; the family used proceeds from rice sales to buy
11 clothes and medicine. During the off-season, Mr. Chansaem's father worked in construction and his
12 mother ran the house.  The four children attended local, rural elementary school.  Although Mr.
13 Chansaem's older sister Kanya and younger brother Wittaya attended secondary school, Mr.
14 Chansaem, as the oldest male child, was required to work and delayed secondary school to help
15 support the family.  At 18 years old, Mr. Chansaem was able to attend secondary school as an adult
16 while his younger brother took over his household duties.  At night, Mr. Chansaem worked as a
17 waiter at a hotel to support his studies and gave his father extra money when he was able to.

18      Ultimately, Mr. Chansaem's older sister died of cancer at age 18 that the family could not
19 afford to treat.  Although the family was eligible for public medical care, the local hospitals did not
20 have the advanced care necessary to treat her condition.   In 1994, Mr. Chansaem's father died of
21 cancer as well.  To try to buy elevated treatment and medicine for his father, the family sold off a
22 portion of the rice farm.  Six months later, the father died and no longer had the same resources to
23 support the remaining members.  Mr. Chansaem then took over the physical labor of running the
24 farm.  Each day before secondary school, Mr. Chansaem ploughed rice and took care of the farm
25 animals.  To this day, Mr. Chansaem's mother, who was 47 when Mr. Chansaem died and is now
26 60,  runs the rice farm with the assistance of Wittaya, who also became ill with a foreign

DEFENDANT'S SENTENCING MEMORANDUM
*UNITED STATES v. CHANSAEM*, 07-425 PJH        - 3 -

inflammation disease in 1995. As a result of that illness, Wittaya lost a great deal of weight and strength, and is not able to assist with many of the physical duties that rice farming requires.

Eventually, Mr. Chansaem realized that his family was not going to survive on rice farming alone into the future. He graduated from his adult secondary school and passed an entrance exam to college, with his mother's encouragement. While working full time, he obtained a bachelor's degree in Technology and Innovation at the Teachers' College in his rural province of Thailand. He continued to work after he graduated from college, always returning home during the rainy season to help his mother with the hard labor of harvesting rice. The assistance Mr. Chansaem provided his mother was always his first priority, as she counted on him to continue the rice production so the family would have a product to sell in exchange for cash.

Mr. Chansaem learned the limited English that he knows by meeting with missionaries at local churches every Saturday and Sunday that he was off from work, who offered free classes in English. While working as a waiter, Mr. Chansaem was exposed to foreigners and longed to communicate with them, travel and see other countries. He diligently worked to learn and perfect the limited English that he could learn. This effort paid off in 2003, when Mr. Chansaem interviewed and was accepted by an agency in Thailand who arranges for temporary work on cruise ships. This application process thrilled his mother, as the potential pay through an American cruise line was quadruple the regular income of the family. Although his flat salary was only $339.00 per month for ten hours of work, Mr. Chansaem was able to work extra jobs in the laundry and the barber to earn approximately $500.00 per month. As an employee on a cruise ship, all of Mr. Chansaem's living expenses, room and board, health and food costs were paid by the company. As such, the money he earned with the cruise line was pure profit for his family. His mother, who recognized the possible benefit to this economic arrangement, borrowed heavily from other family members to pay the agency for the documents, visas, and insurance necessary for Mr. Chansaem to work internationally. Although Mr. Chansaem missed his family for ten months of the year, he greatly enjoyed being able to work and see the world in a manner that was a more efficient and lucrative use of his time.

1    Each month, Mr. Chansaem sent his mother the money he earned, which was of great benefit to
2    her. $500.00 a month goes a long way in rural Thailand, and with his salary, Mr. Chansaem's
3    mother was able to fix the house, pay debt, and most importantly, hire laborers to take over the rice
4    planting and harvesting. Sadly, directly before his arrest on the instant offense, Mr. Chansaem had
5    recently been promoted to Assistant Supervisors of Cleaners with Princess Cruise Lines. His
6    guaranteed salary was set at $860.00 per month, plus tips and part time work. He had been hopeful
7    that he was going to earn approximately $1,500 per month, which would have allowed his mother to
8    hire more help around the farm, stop laboring, and modernize the house to include electricity and
9    plumbing. Without this money, it is unclear what Mr. Chansaem's mother is going to do over the
10   next five years that Mr. Chansaem must now spend in custody.

**ARGUMENT**

### I. UNDER *BOOKER*, A 63 MONTH SENTENCE IS REASONABLE

After *United States v. Booker*, 125 S.Ct 738 (2005). the applicable Sentencing Guideline range of 63-78 months is guiding, but not binding, upon this Court. "A district court must consider the guideline range, but must also consider the other directives set forth in 18 U.S.C. § 3553(a). Thus, under *Booker*, courts must treat the Guidelines as just one of a number of sentencing factors." *United States v. Ranum*, 353 F.Supp. 2d 984, 985 (E.D. Wisc. 2005). Under *Booker*, the United States Sentencing Guidelines are merely "advisory," and sentencing courts are required to consider all of the factors listed in 18 U.S.C. § 3553(a) in imposing sentence. *Booker*, 125 S.Ct. 738, 757 (2005). Significantly, "there is no presumption of *unreasonableness* that attaches to a sentence that varies from the range. A sentence outside the range need only be adequately explained and consistent with § 3553(a) factors." *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (emphasis in original).

The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with" the purposes of sentencing. See 18 U.S.C. § 3553(a)

(emphasis added). Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to create adequate deterrence;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with necessary treatment and training.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors as well, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

As *Booker* emphasized, under the Sentencing Reform Act, "**[n]o limitation** shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *Booker*, 125 S.Ct. at 760 (quoting 18 U.S.C. § 3661)(emphasis added). In the wake of *Booker*, courts are therefore required to consider factors which the guidelines discourage or reject, such as a defendant's family circumstances (§ 5H1.6), his drug dependence (§ 5H1.4), and the age of his prior convictions.

To the extent that the sentencing factors that the Court is bound to consider pursuant to 18 U.S.C. § 3553(a) conflict with the Guidelines or the policy statements of the Guidelines, the district court must, after *Booker*, consider the 3553(a) factors equally with the Guidelines. This result was forecasted by at least one district court. *See Ranum*, 353 F.Supp.2d at 986:

> The guidelines prohibition of considering these factors [age, mental and emotional condition, physical condition including drug or alcohol dependence, employment record, family ties or responsibilities, socio-economic status, civic contributions, lack of guidance as a youth] cannot be squared with the § 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the defendant. . . thus, in cases in which a

> defendant's history and character are positive, consideration of all the 3553(a) factors may call for a sentence outside of the Guideline range.
>
> Further, § 3553(a)(2)(D) requires a sentencing court to evaluate the need to provide the defendant with education, training, treatment, or medical care in the most effective manner. This directive might conflict with the guidelines, which in many cases offer only prison. *See* U.S.S.G. 5C1.1. ("In some cases, a defendant's educational, treatment, or medical needs may be better served by a sentence which permits the offender to remain in the community.")

*Id.* at 986; *see also United States v. Myers*, 353 F.Supp.2d 1026, 1029 (S.D. Iowa 2005)(stating that "the work of a sentencing court, then, is to evaluate all the interest, as represented by the statutory factors, through careful and patient attention to all parties involved.") Once the Court determines and considers the advisory Guideline range, this Court must then equally evaluate the factors enunciated under Title 18, Section 3553(a) to determine a just and appropriate sentence.

In the case of Mr. Chansaem, a low-end sentence of 63 months is appropriate. Prior to the days of *Booker,* the Ninth Circuit has long recognized that a "combination of factors" could together constitute a mitigating circumstance justifying a low-end sentence. *See United States v. Cook*, 938 F.2d 149 (9th Cir. 1991). In *Cook*, the Court explained that "[t]here is not reason to be so literal-minded as to hold that a combination of factors cannot together constitute a 'mitigating circumstance.'" *Id.* at 153. Although the court no longer speaks in the language of "departures," the mitigating factors in Mr. Chansaem' favor, considered under the terms of 18 U.S.C. § 3553, demonstrate that a 63 month sentence is the sentence "no greater than necessary" to fulfil the goals of sentencing enunciated by Congress. Each of the relevant 3553 factors is discussed below, in turn.

**A.    The Nature and Circumstances of the Offense, § 3553(a)(1)**

Mr. Chansaem is being punished for a serious offense – transportation of child pornography. However, as explained above, the circumstances surrounding Mr. Chansaem's purchase of the pornography and his arrival to the United States mitigate the offense significantly. Specifically, Mr. Chansaem was openly carrying child pornography in his suitcase because he did not understand that such material was contraband in the United States, which was the gateway country

for his employment. He purchased the pornography on a street corner in Thailand in an area where such images readily available, and there is no evidence that he was intending to sell or profit from the pornography. Instead, the evidence before the Court indicates that this offense occurred largely out of ignorance on the part of Mr. Chansaem that such images are, in fact, contraband. The case has opened Mr. Chansaem's eyes about the dangers and ills of child pornography, and he will have five years in custody to reinforce that understanding. Given that this offense is Mr. Charkon's first and he does not bear the hallmarks of a pedophile or widespread distributor of child pornography, a five year, three months sentence is appropriate.

**B.     The History and Characteristics of the Defendant, § 3553(a)(1)**

        **1.     Mr. Chansaem Has Faced Obstacles as a Youth**, **Has No Criminal History, and is the Major Source of Support for an Aging Mother and an Infirm Brother**

Mr. Chansaem is the son of peasant farmers in Thailand. His older sister and father are deceased, and his aging mother depends on him as a source of support. His cruise ship occupation was entirely geared toward providing money necessary to support his mother and brother. For the entire five years he will be incarcerated, his mother and brother will have lost the income that they now depend on. Mr. Chansaem is eager to return to work and to again support his family; a sentence longer than five years, three months will be a greater hardship on his relations in Thailand each passing year. He is essentially alone and unsupported in the United States, and now will spend over five years in jails without seeing a family member or friend. Mr. Chansaem is not an individual with a history of a life of crime, or who works or profits from the child sex industry. He is a simple person who has worked hard under difficult conditions his entire life. He made an egregious mistake in judgment when he purchased the CDs at issue, but there is no indication in the record that Mr. Chansaem has not learned from this mistake, or that he cannot be a productive and law-abiding member of society.

Moreover, although Mr. Chansaem is educated, he is unsophisticated and unworldly. He is young, with limited English speaking ability and has had minimal exposure the laws, practices,

political movements, and cultural norms of the United States. As noted by the Probation Officer, different countries have different cultural understandings and norms related to contraband such as child pornography. A quick walk down the streets of the Patpong district of Bangkok reveals no dearth of a variety of pornographic materials; adult, child, and gay pornography is often sold, and as of 2001 (when undersigned counsel was last in Thailand) there did not appear to be a great deal of discrimination between the types on streetcorner carts. Although it is no excuse for the crime at hand, it is important to consider Mr. Chansaem's actions against this reference point, and for the Court to recognize that the Probation Officer is insightful and correct for picking up on Mr. Chansaem's naivete regarding the ills of child pornography. In this vein, knowledge coupled with the prison sentence recommended by the Probation Officer is sufficient, but no greater than necessary, to get the message across to an individual of limited education such as Mr. Chansaem. Quite simply, now that he understands the significance of child pornography, Mr. Chansaem will not repeat his actions here.

### 2. A Five Year, Three Month Sentence is Sufficient for the Purposes of Deterring Mr. Chansaem

Mr. Chansaem has shown that he is a hard worker and lives a responsible life working for and worrying about others. His decision to purchase and travel with child pornography was a life-altering, terrible decision with years of consequences. One moment, he was on his way to work a third year on a cruise ship with a new promotion, a higher salary, and a better way to support his family. The next minute, he found himself in the administrative segregation unit of the Santa Rita jail, due to his small size and the nature of these charges. There, he was informed that in the United States, carrying CDs of this nature carry a five year mandatory minimum penalty that is impossible to surmount. It is not difficult, under these circumstances, to understand that this case has truly influenced Mr. Chansaem to stay far away from child pornography in the future. In reality, it would take a far lower sentence than five years in custody to ensure that Mr. Chansaem is deterred from the purchase of child pornography. Moreover, given the fact that Mr. Chansaem has spent his entire life

1 either working, studying, or learning English, he shows great promise for leading a law-abiding life
2 in the future. There is no indication in the record that Mr. Chansaem will re-offend at the
3 conclusion of a five year, three month custody term. A low-end sentence is accordingly requested.

## CONCLUSION

For the aforementioned reasons, Mr. Charkon Chansaem respectfully requests this Court to sentence him to a low end sentence of 63 months, which is a sentence no greater than necessary that adequately meet the requirements for sentence articulated in 18 U.S.C. § 3553.

DATED: October 2, 2007

                                   Respectfully submitted,

                                   BARRY J. PORTMAN
                                   Federal Public Defender

                                   /S/

                                   _____
                                   ELIZABETH M. FALK
                                   Assistant Federal Public Defender